**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
Case No. _____
*Electronically Filed*

| | | |
|---|---|---|
| **SAMINEH MESBAH** | ) | CIVIL ACTION NO. 3:22CV-567-CHB |
| 27380 Cook Road, | ) | |
| Olmstead Falls, OH 44138 | ) | |
| | ) | |
| **Plaintiff** | ) | |
| vs. | ) | JUDGE _____ |
| | ) | |
| **UNIVERSITY OF LOUISVILLE** | ) | |
| | ) | **COMPLAINT WITH JURY DEMAND** |
| **Serve:** Angela Curry | ) | |
| University of Louisville | ) | |
| Grawemeyer Hall, | ) | |
| Suite 206 | ) | |
| 2301 S Third Street | ) | |
| Louisville, Ky 40292 | ) | |
| | ) | |
| **Defendant** | ) | |

Comes now the Plaintiff, Samineh Mesbah, by and through counsel, and for her First Amended Complaint against Defendant, states as follows:

**PARTIES AND JURISDICTION**

1. At all times relevant hereto Plaintiff, Samineh Mesbah, was a resident and citizen of Jefferson County, Kentucky. Plaintiff is currently a resident of Ohio.

2. At all times relevant hereto, Defendant, University of Louisville ("University"), was a Kentucky Non-Profit Corporation, with its principal office located at the Office of University Counsel, University of Louisville, Louisville, KY 40292. University was at all times mentioned herein an employer within the meaning of KRS § 344, *et seq.*, and Title VII of the Civil Rights Act of 1964.

1

3. Plaintiff was employed by Defendant in Jefferson County, Kentucky, and the employment practices complained of herein all occurred in Jefferson County, Kentucky.

4. Subject matter jurisdiction exists in this Court under 42 U.S.C. §2000, 28 U.S.C §1331, and 28 USC §1367 and other applicable laws.

5. The amount in controversy exceeds the minimum jurisdictional amount to establish Diversity of Citizenship jurisdiction.

6. This Complaint has been filed within the statute of limitations period established for the claims arising herein.

7. Original jurisdiction is appropriate in this Court based upon diversity of citizenship and federal question jurisdiction.

8. Venue in the Western District of Kentucky is appropriate pursuant to 28 U.S.C. §1391 in that a substantial part of the events giving rise to the claim occurred within this district.

## ADMINISTRATIVE REQUIREMENTS

9. Within 300 days of the conduct set forth below, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 474-2022-00815, against Defendant alleging discrimination on the basis of her gender, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Charge").

10. On or about July 28, 2022, the EEOC issued a Right to Sue letter to Plaintiff.

11. Plaintiff received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. §2000e5(f)(1).

12. Plaintiff has filed the instant action within 90 days of her receipt of the Right to Sue letter.

13. Plaintiff has exhausted her administrative requirements pursuant to 29 C.F.R.

§1614.407(b).

## FACTS RELEVANT TO ALL CLAIMS

14. Plaintiff Mesbah is a female.

15. In or around August 2014, Plaintiff Mesbah enrolled as a PhD student at Defendant University.

16. In or around June 2019, Plaintiff Mesbah was hired by Defendant University in a post-doctoral position conducting research at Defendant University's Kentucky Spinal Cord Injury Research Center ("Research Center").

17. In or around mid-2016, during Plaintiff Mesbah's time as a PhD student, Plaintiff Mesbah's advisor asked her to collaborate with Dr. Rejc. During their collaboration, Plaintiff Mesbah reported to Dr. Rejc as her supervisor for the project.

18. Almost immediately, Dr. Rejc began making constant inappropriate and unwanted sexual advances toward Plaintiff Mesbah. This included, but was not limited to, standing behind her and rubbing her shoulders on multiple occasions, placing his hand on her thigh while working on a project together, and repeatedly kicking her foot under the table in meetings.

19. In or around February 2018, after submitting a manuscript related to the project, Dr. Rejc asked Plaintiff Mesbah to go out for drinks to celebrate. Plaintiff Mesbah was under the assumption that other coworkers associated with the project would join them and agreed to go. However, when Plaintiff Mesbah arrived at the bar where they planned to meet, Plaintiff Mesbah was shocked to realize that Dr. Rejc had only invited her to be alone with him, making her extremely uncomfortable. Plaintiff Mesbah stayed only for a short period of time and left as soon as possible.

20. In or around September 2018, Plaintiff Mesbah noticed that Dr. Rejc was in all of the pictures (selfies) she took of herself and a friend at the World Fest in Louisville. Apparently, Dr. Rejc had been stalking Plaintiff Mesbah for several hours during that event, intentionally following very close behind her and her friend but not showing himself. This caused Plaintiff Mesbah to fear his intentions toward her as clearly being more than her supervisor at work.

21. In or around June 2018, hoping to make Dr. Rejc's unwanted sexual advances and touching to stop, Plaintiff Mesbah intentionally reached out to Dr. Rejc's wife at a "Friends for Michael" charity event. She introduced herself and engaged in conversation with his wife in his presence—establishing a clear rejection of his personal advances toward her. Dr. Rejc was clearly irritated by this interaction.

22. Plaintiff Mesbah's interaction with Dr. Rejc and his wife at the public event ceased his sexual harassment but caused Dr. Rejc to immediately begin retaliating against Plaintiff Mesbah through verbal and physical abuse. Dr. Rejc's retaliation included, but was not limited to, constantly berating Plaintiff Mesbah's work and professional worth on a daily basis and knit-picking every aspect of her projects. Dr. Rejc's daily attacks on Plaintiff Mesbah's person and on her work became increasingly hostile and aggressive over the next several months, to the point where he was almost constantly disparaging her and her work. This abuse became physical in the Spring of 2019. On an occasion where Dr. Rejc was attacking Plaintiff Mesbah about her work and making a disparaging comment about her professional worth, Dr. Rejc aggressively smacked Plaintiff Mesbah on the back of her head.

23. At the point of physical abuse, Plaintiff Mesbah knew that she had to move forward with filing a complaint against Dr. Rejc. Fearing for her continued employment, she

began to confide in colleagues about Dr. Rejc's behaviors and sought advice from them on how to proceed. In or around August 2019, Plaintiff Mesbah made a formal complaint about Dr. Rejc's constant sexually hostile and retaliatory behavior toward her to her supervisor, Dr. April Herrity.

24. Following this complaint, and when Dr. Herrity responded to Plaintiff Mesbah, Dr. Herrity directed Plaintiff Mesbah to report her complaints of Dr. Rejc's unwanted sexual advances and physical abuse to Director Susan Harkema, which Plaintiff Mesbah did in or around September 2019.

25. Plaintiff Mesbah told Director Harkema that she desired to file a formal Title VII and/or Title IX complaint against Dr. Rejc. In response, Director Harkema demanded that Plaintiff Mesbah not file a complaint, but that she would handle the matter internally. Director Harkema subsequently removed Plaintiff Mesbah from Dr. Rejc's supervision and promised that she would "never have to work with him again."

26. Plaintiff Mesbah continued in her work at Defendant University in the Research Center. In or around February 2021, Director Harkema promised Plaintiff Mesbah that she would see to it that Plaintiff Mesbah be given a Term Assistant Professorship Position and the "Core Director" role, which came with a significant pay raise.

27. In or around early May 2021, Director Harkema communicated with the Computer Science and Engineering Department chair, Dr. Zhang, about offering Plaintiff Mesbah a Term Assistant Professorship Position with the Computer Science Department of the Research Center. Dr. Zhang indicated to Plaintiff Mesbah that he would welcome her joining his department.

28. In or around May/June 2021, Plaintiff Mesbah received an email from Defendant University that her name was used in Dr. Rejc's grant submission. In reviewing the work, it

appeared that Dr. Rejc had appropriated Plaintiff Mesbah's work and used her work to submit grants under his name. Dr. Rejc's unauthorized use of her name and work was shocking to Plaintiff Mesbah on many levels, but she was primarily concerned with the fact that if the grant was funded, she would be required to work with Dr. Rejc again. Based on this information, Plaintiff Mesbah complained to Director Harkema, describing what she believed was Dr. Rejc's retaliatory unauthorized use of her name and materials for his benefit, and for seemingly creating a future opportunity for her work at Defendant University to be under his control.

29. In response to Plaintiff Mesbah's concerns, Director Harkema scolded Plaintiff Mesbah that she needed to "move on and not dwell on this." In addition, Director Harkema told Plaintiff Mesbah that her unwillingness to let go of Dr. Rejc's harassment and abuse indicated that Plaintiff Mesbah was having "mental problems," and she justified Dr. Rejc's behavior by stating that "the incidents happened a long time ago and [Dr. Rejc] hasn't done anything since then."

30. Plaintiff Mesbah insisted again that she wanted to report the incidents at the University level. In response, Director Harkema untruthfully told Plaintiff Mesbah that there was "nothing [Defendant University] can do about it," because Plaintiff Mesbah didn't "report it at the time." Director Harkema took this position, despite the fact that she was the very person who had advised Plaintiff Mesbah not to report the incidents in the past. Director Harkema then threatened Plaintiff Mesbah that if she reported Dr. Rejc's sexual advances and retaliation, she would not receive a promotion to Core Director, as was previously promised.

31 Despite Director Harkema's threats, Plaintiff Mesbah reported Dr. Rejc's sexual advances and retaliatory behavior to the Department's Human Resources.

32. In response to Plaintiff Mesbah's complaint of sexual harassment and retaliation to Human Resources, Director Harkema stated that "[Dr. Rejc] is just Italian" and "that's what they do," and, although acknowledging that Dr. Rejc had hit Plaintiff Mesbah on the back of her head, tried to downplay his physical abuse by saying that "[Dr. Rejc] was just congratulating [Plaintiff Mesbah] for her PhD defense by tapping her in the head."

33. Human Resources, however, told Director Harkema that they needed to report Plaintiff Mesbah's complaint to the University level. In response, Director Harkema threatened a Human Resources employee and stated that "reporting sexual harassment is not a thing." Director Harkema also stated that Human Resources should print the law saying they must report sexual harassment and bring it to Director Harkema and that "we will sit down and interpret that together." Additionally, Director Harkema told this Human Resources employee that reporting Plaintiff Mesbah's complaints at the University level would jeopardize her job, since her role as a Human Resources employee was to protect Defendant University.

34. Despite Director Harkema's threats, Human Resources reported Plaintiff Mesbah's complaint to Defendant University's Title IX office.

35. During the Title IX investigation over the next several months of 2021, Director Harkema continued to threaten Plaintiff Mesbah, stating that she "would have" already given Plaintiff Mesbah her new position and raise, but she would now have "to wait and see what's going to happen with this investigation."

36. After Plaintiff Mesbah continued to ask Director Harkema about whether she was going to obtain her new position in the Computer Science Department, Director Harkema told Plaintiff Mesbah that she needed to contact Dr. Zhang for the approval. Plaintiff Mesbah had a

meeting with Dr. Zhang in September 2021, where he expressed his interest in hiring Plaintiff Mesbah as a Term Assistant Professor, with a joint appointment at the Research Center. Dr. Zhang, however, specified that in order to move forward with the appointment, he needed a letter from the Research Center stating that it would "financially support the salary for this position."

37. Plaintiff Mesbah followed up with the Research Center several times to obtain the required letter, including with Director Harkema, Human Resources, and Ms. Dori Goya of the Finance Department. Although it was Ms. Goya who accepted the responsibility of producing the required letter for financial commitment of Plaintiff Mesbah's new position, she only gave lip service to Plaintiff Mesbah that she and Director Harkema were "working on it." The letter confirming the financial support for Plaintiff Mesbah's new role was never submitted to Dr. Zhang.

38. In or around October 2021, Plaintiff Mesbah was informed that Director Harkema and the Director of Finance were not going to give Plaintiff Mesbah a promotion, just as Director Harkema threatened prior to Plaintiff Mesbah's complaint to Human Resources against Dr. Rejc.

39. In or around November 2021, Plaintiff Mesbah contacted Dr. Zhang again as to the status of her taking her new position. Dr. Zhang informed Plaintiff Mesbah that the Research Center had never provided him with the commitment letter for funding her position with him, and that he needed to otherwise move forward with the job posting and the hiring process. Dr. Zhang also informed Plaintiff Mesbah that no one from the Research Center had even communicated with him about her possible position after his September meeting with Plaintiff Mesbah.

40. In or around December 18, 2021, the Title IX investigation was dismissed by Defendant despite significant evidence supporting Plaintiff Mesbah's accusations. During the

investigation, no one from Defendant University provided Plaintiff Mesbah with any information, including her right to counsel or that she could switch offices during the pendency of the investigation. This was despite the fact that Plaintiff Mesbah's complaint included her discomfort with continuing to work under Director Harkema and Dr. Rejc.

41.	Plaintiff Mesbah subsequently requested documentation related to Defendant's Title IX investigation. In reviewing the documentation, Plaintiff Mesbah noticed that some of the witnesses' interviews were recorded, while some of her witnesses were documented with "interview notes." The investigation disclosed Director Harkema's admission that she did not handle Plaintiff Mesbah's complaint properly. It also disclosed that Dr. Rejc admitted in his interview that he "touched" Plaintiff Mesbah during the workday while she was under his supervision.

42.	Following the dismissal of the Title IX complaint, neither Director Harkema nor any representative of Defendant University ever mentioned giving Plaintiff Mesbah a raise or promotion, as previously promised. In addition, Director Harkema directed Plaintiff Mesbah to begin to "teach others" how to do all of the job tasks related to Plaintiff Mesbah's position.

43.	On or around February 14, 2022, Plaintiff Mesbah had no option but to leave her employment with Defendant as it was clear that Defendant was refusing her promotion, having her train her replacement(s), and failing to take any remedial action to protect her from further harassment or retaliation.

44.	As a direct result of Defendant University's acts or failures to act stated herein, Plaintiff Mesbah has suffered and continues to suffer irreparable harm, including but not limited

to pain and suffering, emotional distress, mental anxiety, and lost wages and benefits for which she is entitled to compensation.

## COUNT I
## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

45. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

46. The above actions by Defendant, its agents and/or supervisors, constitute sexual harassment, including quid pro quo and hostile work environment harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, and KRS § 344, et seq.

47. The above-described unwelcome sexual harassment created an intimidating, oppressive, hostile, and offensive work environment which interfered with Plaintiff's emotional well-being.

48. Defendant knew or should have known of the actions described herein, and its failure to prevent said actions directed against Plaintiff inflicted upon her severe mental and emotional distress, including humiliation in front of her colleagues and suffering injuries to her career and reputation, all to her damage.

49. As a proximate result of the Defendant's actions as set forth above, Plaintiff is now suffering and will continue to suffer irreparable harm and injury, for which she should be compensated.

## COUNT II
## RETALIATION – TITLE VII & KRS § 344

50. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

51. Once Plaintiff complained of the illegal hostile work environment, Defendant took numerous retaliatory acts against her, culminating in Defendant's failure to promote and ultimate constructive discharge of Plaintiff

52. As a direct and proximate result of Defendant's conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which she should be compensated.

### COUNT III
### TITLE IX
### SEXUAL HARASSMENT HOSTILE WORK ENVIRONMENT

53. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

54. Title IX, enacted in 1972, provides in relevant part: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . . 20 U.S.C. § 1681(a). The Civil Rights Restoration Act of 1987 made Congress' intent plain that "program or activity," as used in Title IX, applies to any program or activity so long as any part of the educational institution receives federal financial assistance. 20 U.S.C. § 1687.

55. The above actions by Defendant, its agents and/or supervisors, constitute sexual harassment, including quid pro quo and hostile work environment harassment.

56. The above-described unwelcome sexual harassment created an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional well-being.

57. Defendant knew or should have known of the actions described herein, and its failure to prevent said actions directed against Plaintiff inflicted upon her severe mental and emotional distress, including humiliation in front of her colleagues and suffering injuries to her career and reputation, all to her damage.

58. As a proximate result of the Defendants' actions as set forth above, Plaintiff is now suffering and will continue to suffer irreparable harm and injury, for which she should be compensated.

### COUNT IV
### TITLE IX
### RETALIATION

59. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

60. Once Plaintiff complained of the illegal hostile work environment, Defendant took numerous retaliatory acts against her, culminating in Defendant's failure to promote and ultimate constructive discharge of Plaintiff

61. As a direct and proximate result of Defendant's conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which she should be compensated.

**WHEREFORE,** the Plaintiff, Samineh Mesbah, demands judgment against the Defendant as follows:

A. For all compensatory, liquidated, and punitive damages with respect to statutory and tort claims in an amount to be determined by the jury;

B. For back pay, reinstatement or in the alternative front pay, and other appropriate relief;


C.      For an award of reasonable costs and attorney's fees;

D.      For pre-judgment and post-judgment interest; and

E.      For any and all other equitable and legal relief to which Plaintiffs appear entitled.

Respectfully submitted,

GATLIN VOELKER, PLLC

/s/Dominic A. Capano
Dominic A. Capano (KBA #98724)
Barbara D. Bonar (KBA #43797)
50 E. Rivercenter Blvd., Ste. #1275
Covington, Kentucky 41011
(859) 781-9100
(859) 240-4888 (Bonar cell)
dcapano@gatlinvoelker.com
bbonar@gatlinvoelker.com

## JURY DEMAND

Plaintiff herein demands a trial by jury.

/s/ Dominic A. Capano
Dominic A. Capano