UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SAMINEH MESBAH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:22-CV-567-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNIVERSITY OF LOUISVILLE, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant University of Louisville's Motion to Dismiss, [R. 19]. Plaintiff Samineh Mesbah filed a response, [R. 22], and Defendant replied, [R. 23]. The matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss, [R. 19].

## I. BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint. [R. 16]. For clarity, the Court has attempted to recite the alleged facts in chronological order.

In or around August 2013, Plaintiff enrolled as a PhD student at the University of Louisville. *Id.* ¶ 15. Sometime in or around mid-2016, while Plaintiff was a PhD student, her advisor asked her to collaborate with Dr. Rejc.[1] *Id.* ¶ 17. Dr. Rejc served as Plaintiff's supervisor on that project. *Id.* Plaintiff alleges that, "[a]lmost immediately, Dr. Rejc began making constant inappropriate and unwanted sexual advances toward" her. *Id.* ¶ 18. These alleged sexual advances included "standing behind her and rubbing her shoulders on multiple occasions, placing his hand on her thigh while working on a project together, and repeatedly kicking her

---

[1] Dr. Rejc's first name is not provided.

foot under the table in meetings." *Id.* Dr. Rejc did not make similar advances towards any of his male students or coworkers. *Id.*

In or around February 2018, while Plaintiff was still a PhD student, Dr. Rejc asked Plaintiff to "go out for drinks to celebrate" the submission of a project manuscript. *Id.* ¶ 19. Plaintiff was under the impression that other coworkers from the project would be joining as well, and she agreed to attend. *Id.* Upon arriving at the bar, however, Plaintiff "was shocked" to see that Dr. Rejc had invited only Plaintiff. *Id.* This made Plaintiff "extremely uncomfortable," and she left as soon as possible. *Id.*

In or around June 2018, while Plaintiff was still a PhD student, Plaintiff intentionally reached out to Dr. Rejc's wife at a charity event. *Id.* ¶ 22. Plaintiff alleges that she did so, "hoping to make Dr. Rejc's unwanted sexual advances and touching to stop (sic)." *Id.* Plaintiff introduced herself to Dr. Rejc's wife and engaged in a conversation with her in his presence, allegedly "establishing a clear rejection of his personal advances toward her." *Id.* Plaintiff alleges that "Dr. Rejc was clearly irritated by this interaction." *Id.*

Plaintiff alleges that her interaction with Dr. Rejc's wife at the charity event "ceased his sexual harassment but caused Dr. Rejc to immediately begin retaliating against Plaintiff Mesbah through verbal and physical abuse." *Id.* ¶ 23. This alleged abuse included "constantly berating Plaintiff Mesbah's work and professional worth on a daily basis and knit-picking (sic) every aspect of her projects." *Id.* Plaintiff describes this behavior as "daily attacks" on her person and her work that "became increasingly hostile and aggressive over the next several months, to the point where [Dr. Rejc] was almost constantly disparaging her and her work." *Id.*

In or around September 2018, while Plaintiff was still a PhD student, Plaintiff attended World Fest in Louisville with a friend. *Id.* ¶ 20. She discovered that Dr. Rejc appeared in all of

the photographs that she had taken with her friend at the event. *Id.* From this, Plaintiff concludes that "Dr. Rejc had been stalking Plaintiff Mesbah for several hours during the event, intentionally following very close behind her and her friend but not showing himself." *Id.* This behavior caused Plaintiff "to fear [Dr. Rejc's] intentions toward her as clearly being more than her supervisor at work." *Id.*

In or around June 2019, Plaintiff was hired by the University of Louisville in a post-doctoral research position at the University's Kentucky Spinal Cord Injury Research Center. *Id.* ¶ 16. Plaintiff  alleges that, "[d]uring her time as a PhD student and during her employment" with the University, "Dr. Rejc constantly made inappropriate and unwanted sexual advances towards Plaintiff which contributed to the hostile work environment." *Id.* ¶ 21. This behavior included "repeatedly asking Plaintiff out for drinks, constantly touching Plaintiff inappropriately, constantly staring at Plaintiff's chest and commenting on Plaintiff's outfits, repeatedly asking Plaintiff if she has a boyfriend, and constantly sending Plaintiff text messages over the weekends and on non-working time." *Id.*

Sometime in the spring of 2019, Plaintiff alleges that Dr. Rejc's behavior became physically abusive. *Id.* ¶ 23. She refers to an occasion where Dr. Rejc "was attacking [her] about her work and making a disparaging comment about her professional worth" when he "aggressively smacked [her] on the back of her head." *Id.* At this point, Plaintiff "knew that she had to move forward with filing a complaint against Dr. Rejc." *Id.* ¶ 24. She began to confide in her colleagues about Dr. Rejc's behavior and sought advice on how to proceed. *Id.*

In or around August 2019, Plaintiff made a formal complaint with her supervisor, Dr. April Herrity, regarding Dr. Rejc's "constant sexually hostile and retaliatory behavior." *Id.* Dr. Herrity directed Plaintiff to report her complaints to Director Susan Harkema. *Id.*

In or around September 2019, Plaintiff told Director Harkema that she wished to file a formal Title VII and/or Title IX complaint against Dr. Rejc. *Id.* ¶ 26. Director Harkema allegedly demanded that Plaintiff Mesbah not file a complaint, and instead insisted that she would handle the matter internally. *Id.* Director Harkema then removed Plaintiff from Dr. Rejc's supervision and promised that Plaintiff would "never have to work with him again." *Id.* However, Director Harkema never confronted Dr. Rejc about his behavior toward Plaintiff. *Id.* ¶ 27. As a result, Dr. Rejc "continued to make repeated inappropriate and unwanted sexual advances toward Plaintiff, and continually retaliated against Plaintiff Mesbah for refusing his advances." *Id.*

In or around February 2021, Director Harkema promised Plaintiff that "she would see to it that Plaintiff Mesbah be given a Term Assistant Professorship Position and the 'Core Director' role, which came with a significant pay raise." *Id.* ¶ 28. In or around early May 2021, Director Harkema communicated with Dr. Zhang, the chair of the Science and Engineering Department, about offering Plaintiff a Term Assistant Professorship Position with the Computer Science Department. *Id.* ¶ 29. Dr. Zhang then indicated to Plaintiff "that he would welcome her joining his department." *Id.*

In or around May or June 2021, Plaintiff was notified by the University that her name had been used in Dr. Rejc's grant submission. *Id.* ¶ 30. Plaintiff reviewed the submission and believed that Dr. Rejc had misappropriated Plaintiff's work and submitted her work under his own name. *Id.* Plaintiff was shocked by this and concerned that, if the grant were funded, she might be required to work with Dr. Rejc again. *Id.*

Plaintiff complained to Director Harkema and "describe[ed] what she believed was Dr. Rejc's retaliatory unauthorized use of her name and materials for his benefit, and for seemingly creating a future opportunity for her work at [the University] to be under his control." *Id.*

Director Harkema "scolded Plaintiff" and told her to "move on and not dwell on this." *Id.* ¶ 31.

She also told Plaintiff that her unwillingness to ignore Dr. Rejc's behavior suggested that

Plaintiff was suffering from "mental problems." *Id.* Director Harkema also told Plaintiff that "the

incidents happened a long time ago and [Dr. Rejc] hasn't done anything since then." *Id.*

Plaintiff insisted that she wanted to report the incidents. *Id.* ¶ 32. Director Harkema told

Plaintiff that there was "nothing [Defendant University] can do about it" because Plaintiff had

not reported the incidents earlier. *Id.* Director Harkema then threatened that, if Plaintiff reported

Dr. Rejc, Plaintiff would not receive the Core Director promotion. *Id.*

Plaintiff reported Dr. Rejc's behavior to Human Resources. *Id.* ¶ 33. Director Harkema

tried to downplay Dr. Rejc's behavior to Human Resources, but Human Resources insisted that

the matter be reported "to the University level." *Id.* ¶¶ 34–35. Human Resources ultimately

reported the matter to the University's Title IX office. *Id.* ¶ 36.

A Title IX investigation occurred over the next several months. During the investigation,

Director Harkema "continued to retaliate against Plaintiff Mesbah," and told Plaintiff that she

would have already given her the new position and raise, but now she needed to wait until the

investigation concluded because "we cannot have someone working for us that cannot

collaborate with everyone else because we are a highly collaborative center." *Id.* ¶ 37. Director

Harkema also told Plaintiff she would need to speak to Dr. Zhang about approval for the

position.

In September 2021, Plaintiff met with Dr. Zhang, who expressed an interest in hiring

Plaintiff as a Term Assistant Professor so long as he received a letter from the Research Center

stating that it would "financially support the salary for this position." *Id.* ¶ 38. Plaintiff was

ultimately told by the Finance Department that it was working with Director Harkema to obtain

the letter. *Id.* ¶ 39. The letter was never submitted to Dr. Zhang. *Id.* In or around October 2021, Plaintiff was informed that the Director of the Finance Department and Director Harkema would not be giving Plaintiff a promotion. *Id.* ¶ 40. The following month, November 2021, Dr. Zhang informed Plaintiff that he had never received the funding letter for her position with his department. *Id.* ¶ 41.

Plaintiff further alleges that, sometime in the fall of 2021, during the pendency of the Title IX investigation, Director Harkema "pinned Plaintiff against a wall with her fists on Plaintiff's chest in order to further intimidate and retaliate against Plaintiff." *Id.* ¶ 42.

On December 18, 2021, the University dismissed the Title IX investigation. *Id.* ¶ 43. Afterward, neither Director Harkema nor any other University representative made any mention of giving Plaintiff a raise or a promotion. *Id.* ¶ 45. Director Harkema instead told Plaintiff to begin teaching other employees how to perform Plaintiff's work. *Id.* Because the University "was refusing her promotion" and forcing Plaintiff to train her replacements, and because the University "fail[ed] to take any remedial action to protect her from further harassment or retaliation," Plaintiff felt she "had no option but to leave her employment with" the University. *Id.* ¶ 46. On February 14, 2022, Plaintiff quit her job with the University. *Id.*

On October 24, 2022, Plaintiff brought suit in this Court, naming the University of Louisville as the sole defendant. [R. 1]. The University moved for dismissal, [R. 9], and in response, Plaintiff sought leave to file an amended complaint. [R. 12]. The Court ultimately granted that request and denied the Motion to Dismiss as moot. [R. 15].

In her Amended Complaint, Plaintiff again names the University as the sole defendant and alleges the facts outlined above. *See* [R. 16]. She asserts the following causes of action: "sexual harassment/hostile work environment" in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e–2000e-17, and the Kentucky Civil Rights Act ("KCRA"), KRS §§ 344.040–344.110, (Count I); retaliation in violation of Title VII and the KCRA (Count II); "sexual harassment hostile work environment" in violation of Title IX of the Civil Rights Act (Count III); and retaliation in violation of Title IX (Count IV). *Id.* at 10–13. Defendant now asks the Court to dismiss this Amended Complaint. [R. 19]. Plaintiff has responded, [R. 22], and Defendant replied. [R. 23]. The matter is therefore ripe for review.

## II. LEGAL STANDARD

As an initial matter, the Court must address the legal standard outlined in Plaintiff's response brief. [R. 22, pp. 1–2]. Plaintiff vaguely references "material issues of fact," apparently seeking to invoke the standard applicable to a motion for summary judgment. *See, e.g.*, *id.* at 9; Fed. R. Civ. P. 56. This case does not involve a motion for summary judgment, and the parties have not asked the Court to consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d) (converting a motion to dismiss into one for summary judgment when considering matters outside the pleadings). The summary judgment standard alluded to by Plaintiff (and recited in much of the case law cited by Defendant) is therefore inapplicable.

Plaintiff also repeatedly refers to Federal Rule of Civil Procedure 12(c)'s standard for a motion for judgment on the pleadings and even refers to Defendant's Motion to Dismiss as a "Motion for Judgment on the Pleadings." [R. 22, pp. 1–2, 9]. The primary distinction between a motion to dismiss under Rule 12(b) and a motion for judgment on the pleadings under Rule 12(c) is one of timing. *Prudential Ins. Co. of America v. McFadden*, 504 F.Supp.3d 627, 632 (E.D. Ky. 2020) (citing *In re Brizinova*, 592 B.R. 442, 459 (E.D. N.Y. 2018)). When the motion is filed before an answer, it is generally treated as a motion to dismiss under Rule 12(b), while "a motion to dismiss after the pleadings close will be treated as a motion for judgment on the pleadings"

under Rule 12(c). *Id.* (quoting *In re Brizinova*, 592 B.R. at 459). Ultimately, "the same standard applies to motions made under either subsection." *Id.* (quoting *In re Brizinova*, 592 B.R. at 459). Nevertheless, the Court feels compelled to address the distinction between these two motions, given Plaintiff's repeated references to Rule 12(c). Defendant filed its Motion to Dismiss before filing an answer and before the pleadings otherwise closed. *See* [R. 19]. Accordingly, the appropriate legal standard is found in Rule 12(b)(6).

Under that rule, a party may move for dismissal for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable

inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

## III. ANALYSIS

### A. Sexual Harassment/Hostile Work Environment Under Title VII and the KCRA (Count I)

Under Title VII of the Civil Rights Act of 1964, "[it] shall be an unlawful practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1); *see also Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, *3 (6th Cir. Aug. 2, 2022). The KCRA similarly makes it "unlawful for an employer to discriminate against an employee on the basis of sex." *Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 498 (6th Cir. 2016) (citing 42 U.S.C. § 200e-2(a); KRS § 344.040(1)(a)). Both Title VII and the KCRA prohibit "'[d]iscrimination based on sex' that 'create[s] a hostile or abusive work environment.'" *Bar*, 2022 WL 3042844, at *3 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)); *Boggs v. Appalachian Regional Healthcare, Inc.*, No. 7:20-CV-151-REW, 2021 WL 5413801, *5 (E.D. Ky. July 16, 2021) (explaining that the KCRA contemplates claims for sexual harassment/hostile work environment).

Claims brought under the KCRA are "to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (citation omitted); *see also Roof*, 641 F. App'x at 497 ("Because the KCRA mirrors Title VII, we use the federal standards for evaluating sex-discrimination claims." (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000))). Accordingly, the Court turns to case law evaluating Title VII claims.

Courts recognize two different types of workplace sexual harassment that may constitute discrimination based on sex in violation of Title VII: "*quid pro quo* harassment, in which a supervisor requests sexual favors in exchange for job benefits, and 'hostile work environment' harassment, in which a pervasive atmosphere of sexual harassment creates an objectively hostile work environment." *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997), *abrogated on other grounds as recognized in Collette v. Stein-Mart, Inc.*, 126 F. App'x 678 (6th Cir. 2005); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 750 (1998); *Grego v. Meijer, Inc.*, 239 F.Supp.2d 676, 680 (W.D. Ky. 2002) (citations omitted). In the present case, Plaintiff identifies her first cause of action as "sexual harassment/hostile work environment," citing both Title VII and the KCRA. [R. 16, p. 10]. She specifically alleges that the actions of "Defendant, its agents and/or supervisors, constitute sexual harassment, including quid pro quo and hostile work environment harassment." *Id.* ¶ 49. However, in her response brief, Plaintiff makes no reference to any quid pro quo forms of sexual harassment and focuses only on her hostile work environment claim. [R. 22, pp. 3–5]. From this, and from the factual allegations asserted in the Amended Complaint, [R. 16], as well as Plaintiff's labeling of her cause of action as "sexual harassment/hostile work environment," the Court understands that Plaintiff pursues a hostile work environment claim, based on alleged sexual harassment by her supervisor, Dr. Rejc.

To succeed on this hostile work environment claim, a plaintiff must establish: "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on sex, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the employer is liable for the harassment."[2] *Blackmon v. Eaton Corp.*, 587 F. App'x 925, 930 (6th Cir. 2014) (citing *Williams*

---

[2] Regarding the fifth element, "[t]he standard for employer liability differs depending on whether the harassment was carried out by a supervisor or coworker." *Doe v. City of Detroit, Mich.*, 3 F.4th 294, 301 (6th Cir. 2021). If the

*v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011)); *see also Clark*, 400 F.3d at 347 (reciting same elements for KCRA hostile work environment claim). Ultimately, a plaintiff must prove each of these elements to prevail on a hostile work environment claim; however, at this stage of the proceedings, a plaintiff "does not have the initial burden of establishing a prima facie hostile work environment claim to survive a motion to dismiss." *Austin v. Alexander*, 439 F.Supp.3d 1019, 1024 (M.D. Tenn. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); *see also Bar*, 2022 WL 3042844, at *3; *Roof*, 641 F. App'x at 497. Instead, a plaintiff need only satisfy the plausibility standard outlined by the Supreme Court in *Twombly* and *Iqbal* and described in more detail above. *See, e.g.*, *Roof*, 641 F. App'x at 497; *supra* Section II.

Thus, in the context of a Title VII claim, a complaint satisfies federal pleading standards "so long as it 'provides an adequate factual basis for a Title VII discrimination claim.'" *Bar*, 2022 WL 3042844, at *3 (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012)). In other words, the complaint "need not present 'detailed factual allegations,'" but "it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that an employer violated Title VII. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678); *see also Bar*, 2022 WL 3042844, at *4. So long as "a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard [outlined in *Twombly* and *Iqbal*] has been satisfied." *Keys*, 684 F.3d at 610. In determining whether this standard has

---

harasser is a supervisor, "the employer is vicariously liable for the hostile work environment." *Id.* (citing *Clark*, 400 F.3d at 348). If the harasser is a coworker, "the employer is liable only 'if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.* (quoting *Clark*, 400 F.3d at 348). In this case, Plaintiff alleges that "Defendant knew or should have known of" Dr. Recj's behavior and failed to prevent such actions. [R. 16, ¶ 51]. However, the Court understands that Plaintiff alleges sexual harassment by a *supervisor*. Regardless, Defendant does not challenge this fifth element in its Motion to Dismiss.

been met, courts may consider the elements of a prima facie case. *Brown v. Wormuth*, No. 3:21-CV-037-CHB, 2022 WL 4449331, *3 (W.D. Ky. Sept. 23, 2022); *Jodry v. Fire Door Solutions, LLC*, No. 3:20-cv-00243, 2020 WL 7769924, *4 (M.D. Tenn. Dec. 30, 2020).

In the present case, Defendant first argues that Plaintiff's claim for sexual harassment/hostile work environment under Title VII and the KCRA fails for the following reasons: (1) Plaintiff identifies alleged harassment that occurred while she was a student, but these provisions protect employees; (2) the Amended Complaint contains contradictory allegations; (3) the Amended Complaint contains unsupported legal conclusions; (4) the alleged harassment was not based on Plaintiff's sex; and (5) the alleged harassment was not severe or pervasive. [R. 19-1, p. 5]. The Court addresses each of these arguments in turn.

### 1.   Plaintiff's Student Status

Defendant correctly notes that Title VII and the KCRA protect *employees* from discrimination from their employers, but it does not apply to students who are not otherwise employed by the defendant. [R. 19-1, p. 6]; *Wittenberg v. St. Charles Mercy Hosp.*, 229 F.3d 1155, 2000 WL 1175429, *2 (6th Cir. Aug. 11, 2000) (agreeing with district court's dismissal of the plaintiff's Title VII claims arising from conduct that occurred when she was a student because "Title VII, by definition, applies to employers, employment agencies and labor organizations"). Defendant argues that the relevant alleged harassment in this case occurred during Plaintiff's time as a student, and therefore her Title VII and KCRA sexual harassment/hostile work environment claim must fail. [R. 19-1, pp. 6–7]. In her response brief, Plaintiff explains that her "Title IX claims are based on incidents which occurred prior to her employment with Defendant, and during her tenure as a PhD student with Defendant

University." [R. 22, p. 9]. However, she alleges that she was "subjected to additional unwanted sexual advances and retaliation during her employment with Defendant University." *Id.* at 10.

From this response and the allegations in the Amended Complaint, the Court understands that Plaintiff's Title VII and KCRA claims are based on the allegations of sexual harassment that occurred during her employment with Defendant (which began in June 2019), while her Title IX claims are based on the allegations relating to her tenure as a PhD student. Accordingly, the Court will deny Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's Title VII and KCRA sexual harassment/hostile work environment claim (Count I) on that basis.

### 2. Contradictory Allegations

Defendant next argues that the Amended Complaint contains contradictory allegations and that such allegations are fatal to her Title VII and KCRA sexual harassment/hostile work environment claim. [R. 19-1, pp. 7–8]. Defendant cites specifically to Plaintiff's allegation that her interaction with Dr. Rejc's wife at the charity event in June 2018 "ceased his sexual harassment." [R. 16, ¶ 23]; *see also* [R. 19-1, p. 7]. Defendant argues that this contradicts with her allegation that Dr. Rejc "continued to make repeated inappropriate and unwanted sexual advances toward Plaintiff" after she expressed a desire to file a formal complaint against him in September 2019. [R. 16, ¶ 27]; *see also* [R. 19-1, p. 7]. Defendant insists that such "[c]ontradictory allegations within a complaint are clear grounds for dismissal." [R. 19-1, p. 7].

The Court disagrees with Defendant's characterization of the cited allegations. True, Plaintiff alleges that her interaction with Dr. Rejc's wife at the charity event in June 2018 caused the sexual harassment to "cease." [R. 16, ¶ 23]. Later in the Amended Complaint, however, she alleges that the sexual harassment continued through her employment with Defendant and after she expressed a desire to file a complaint in September 2019. *Id.* ¶ 27. But viewing these

- 13 -

allegations in the light most favorable to Plaintiff, and considering the Amended Complaint as a whole, the Court finds that a plausible reading of the Amended Complaint indicates that Dr. Rejc temporarily ceased sexually harassing Plaintiff immediately after the June 2018 charity event, but he did not *permanently* cease such behavior. In fact, there is no allegation in the Amended Complaint stating that the sexual harassment ceased permanently in 2018; instead, Plaintiff alleges that the harassment continued at a later date. As such, the allegations cited by Defendant are not fatally contradictory.

Accordingly, the Court will deny Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's Title VII and KCRA sexual harassment/hostile work environment claim (Count I) on the basis that the Amended Complaint contains fatally contradictory allegations.

### 3.   Legal Conclusions

Defendant also argues that the Amended Complaint contains "impermissible legal conclusions" and as a result, her Title VII and KCRA sexual harassment/hostile work environment claim must be dismissed. [R. 19-1, pp. 8–9]. It is true that a complaint "need not contain detailed factual allegations," but it "must include more than labels and conclusions." *Taylor v. Davis*, No. 1:21-cv-276, 2021 WL 4145628, *3 (W.D. Mich. Sept. 13, 2021) (citing *Twombly*, 550 U.S. at 555; *Ashcroft*, 556 U.S. at 678). Courts have therefore held that "general allegations of sex-based 'discrimination' and 'harassment' without [] any specific factual allegations" to support those claims are too vague to survive a motion to dismiss. *Jones v. Air Service/ABM*, No. 2:19-cv-02861-TLP-tmp, 2020 WL 4500673, *2 (W.D. Tenn. Aug. 5, 2020) (adopting Report and Recommendation).[3]

---

[3] Defendant also relies heavily on *Taylor v. Davis*, No. 1:21-cv-276, 2021 WL 4145628 (W.D. Mich. Sept. 13, 2021), in which the district court found that a "nonspecific allegation that [a defendant] asked [the plaintiff] to engage in a sexual act," without more, was insufficient to allege a claim of sexual abuse. *Id.* at *7. But that case did not involve a Title VII claim, and the *Taylor* court specifically considered the standard for alleging sexual abuse in

Here, Defendant argues that Plaintiff's "mere assertions that the alleged harassment 'continued' and consisted of 'inappropriate and sexual advances' should not be accepted as true." *Id.* at 8 (quoting [R. 16, ¶¶ 18, 27]). Defendant insists that "[t]hese assertions are not factual allegations; they are conclusions." *Id.* at 9. However, Defendant cites only to these allegations and ignores the remainder of the specific factual allegations in the Amended Complaint. Having reviewed the Amended Complaint in full, the Court finds that Plaintiff has provided sufficient factual allegations to plausibly state a claim for sexual harassment/hostile work environment under Title VII. For example, Plaintiff alleges that

> [d]uring her time as a PhD student and during her employment with Defendant, Dr. Rejc constantly made inappropriate and unwanted sexual advances towards Plaintiff . . . including, but not limited to, repeatedly asking Plaintiff out for drinks, constantly touching Plaintiff inappropriately, constantly staring at Plaintiff's chest and commenting on Plaintiff's outfits, repeatedly asking Plaintiff if she has a boyfriend, and constantly sending Plaintiff text messages over the weekends and on non-working time.

[R. 16, ¶ 27]. Defendant conveniently overlooks these factual allegations and cites only to what it characterizes as "impermissible legal conclusions." [R. 19-1, pp. 8–9]. The Court declines to rule that such allegations, when viewed in context with the other specific factual allegations in the Amended Complaint, are mere conclusory allegations that require dismissal of Plaintiff's Title VII sexual harassment/hostile work environment claim.  To the extent Defendant cites to these factual allegations and argues that they are insufficient to establish harassment based on Plaintiff's sex or severe and pervasive harassment, the Court addresses those arguments below.

---

the context of an Eighth Amendment claim against prison guards. *Id.* That court ultimately concluded that the plaintiff's "[c]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983." *Id.* (citations omitted).

The Court will therefore deny Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's Title VII and KCRA sexual harassment/hostile work environment claim (Count I) on the basis that the Amended Complaint contains impermissible legal conclusions.

### 4. Harassment Based on Sex

Defendant next argues that Plaintiff has failed to sufficiently allege the third element of her Title VII and KCRA sexual harassment/hostile work environment claim, namely, that "the harassment was based on sex." *Blackmon*, 587 F. App'x at 930 (citation omitted); [R. 19-1, p. 9]. More specifically, Defendant argues that the Plaintiff "only identifies vague generalities after she became an employee in June 2019," and fails to identify any harassment on the basis of sex. *Id.* Plaintiff disputes this assertion but does not expand on her position beyond stating that her Amended Complaint satisfies federal pleading standards. [R. 22, p. 4].

As an initial matter, the Court notes that nearly every case cited by Defendant in support of this argument was decided at the summary judgment stage. *See* [R. 19-1, pp. 9–12]. But none of those cases addressed the issue presently before this Court, namely, whether Plaintiff "allege[s] sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant violated Title VII. *Keys*, 684 F.3d at 610 (quoting *Ashcroft*, 556 U.S. at 678); *see also Kibbons v. Taft Sch. Dist. 90*, 563 F.Supp.3d 798, 808–09 (N.D. Ill. 2021) (explaining that the plaintiff's "pleading burden is not as high as Defendants suggest" and declining to consider the several cases cited by the defendants that were resolved at the summary judgment or trial stage). Because this case is being resolved at the motion to dismiss stage, the Court turns to cases that also involved Rule 12(b)(6) motions to dismiss.

Defendant cites to one such case. In *Dearborn v. Onin Staffing, LLC*, No. 3:20-cv-387-DJH, 2021 WL 1069039 (W.D. Ky. Mar. 18, 2021), this Court granted a motion to dismiss a hostile work environment claim arising under the KCRA. In that case, the female plaintiff alleged that a human resources manager, also female, had spoken openly and in graphic detail about a sexual relationship that the manager was having with a male manager. *Id.* at *1. The human resources manager had also indicated that she would like to have a sexual relationship with the plaintiff. *Id.* The Court considered these comments but found that most of the remarks were not made specifically to the plaintiff and "were not of a nature particularly offensive to or derogatory of women." *Id.* at *3. And "[t]o the extent [the human resources manager] made sexual comments directed at [the plaintiff], the complaint does not indicate that those two comments were because [the plaintiff] was female." *Id.* The Court therefore found that the plaintiff "fail[ed] to state a plausible claim of hostile work environment because she does not plead any facts from which the Court could reasonably infer that she was subjected to harassment because she was a woman." *Id.*

Relying in part on *Dearborn*, Defendant argues that Plaintiff's Amended Complaint falls short of alleging discrimination based on Plaintiff's sex. But the present case is distinguishable from the *Dearborn* case. That case involved allegations of *same-sex* harassment, or in other words, sexual harassment by a coworker of the same sex. The Supreme Court discussed the difference between same-sex harassment and male-female harassment in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), a case cited in *Dearborn*. *See Dearborn*, 2021 WL 1069039, at *3. In *Onacle*, the Court explained that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is

reasonable to assume those proposals would not have been made to someone of the same sex." *Onacle*, 523 U.S. at 80. "But that inference is not automatically available with same-sex harassment." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012) (citing *Onacle*, 523 U.S. at 80); *see also Onacle*, 523 U.S. at 80 (describing different ways in which a trier of fact may infer sex-based harassment in a same-sex harassment suit).

The present case involves allegations of male-female harassment, and the Court therefore turns to cases involving harassers of the opposite sex, resolved at the motion to dismiss stage. For example, in *Austin v. Alexander*, 439 F.Supp.3d 1019 (M.D. Tenn. 2020), the plaintiff alleged that, during her time as a personal assistant, her direct supervisor acted inappropriately towards her. *Id.* at 1022. She specifically alleged that he "sent her a slew of lewd and inappropriate images, made demeaning comments about her clothing and hair on multiple occasions, and forced her to exercise with a personal trainer at work multiple times a week in an area that he monitored by video camera." *Id.* at 1024–25. She also alleged that her employer failed to reprimand her supervisor's son, also an employee, after he attempted to put his hand down the plaintiff's shirt. *Id.* at 1025. The district court construed these allegations in the light most favorable to the plaintiff, and, viewing the complaint as a whole, the district court also found it "reasonable to infer that the sexual nature of this conduct was based, at least in part, on [the plaintiff's] sex." *Id.* The court therefore denied the motion to dismiss the plaintiff's Title VII hostile work environment claim. *Id.*

Similarly, the allegations in *Kibbons v. Taft School District 90*, 563 F.Supp.3d 798 (N.D. Ill. 2021) were sufficient to plead unwarranted harassment based on the plaintiff's sex. In that case, the district court found that, based on the allegations in the complaint, the plaintiff "suffered unwanted harassment that was based on her sex—with the sex-based nature of the

harassment being suggested by, among other things, [the male supervisor's] conduct in asking [the female plaintiff] to drink with him in [a] graveyard and to climb up a ladder in front of him in a skirt and high heels." *Id.* at 807. The court also noted that a few of the plaintiff's allegations "have a clear link to her sex: that [the supervisor] repeatedly asked her out despite her refusals, told her to climb a ladder in front of him so that he could ogle her, and repeatedly sat in her office and watched her work in silence." *Id.* at 808; *see also Ryan v. Kentucky Department of Corrections*, No. 5:14-CV-89-TBR, 2016 WL 3647155, *3 (W.D. Ky. June 30, 2016) (finding that the plaintiff plausibly alleged discrimination based on sex where male supervisor subjected her to various sexual comments and engaged in conversations involving sexual topics in her presence).

The Court finds Plaintiff's allegations to be similar to those raised in the above-cited cases. Like the allegations in those cases, many of Plaintiff's allegations of harassment are clearly tied to her sex. For example, Plaintiff alleges that, during her employment, "Dr. Rejc constantly made inappropriate and unwanted sexual advances towards Plaintiff which contributed to the hostile work environment." [R. 16, ¶ 21]. This behavior included "repeatedly asking Plaintiff out for drinks, constantly touching Plaintiff inappropriately, constantly staring at Plaintiff's chest and commenting on Plaintiff's outfits, repeatedly asking Plaintiff if she has a boyfriend, and constantly sending Plaintiff text messages over the weekends and on non-working time." *Id.* Considering the totality of the circumstances alleged in the Amended Complaint and accepting those allegations as true for purposes of this motion to dismiss, the Court finds that Plaintiff has sufficiently alleged harassment based on her sex.

The Court will therefore deny Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's Title VII and KCRA sexual harassment/hostile work environment claim (Count I) for failure to allege harassment based on sex.

### 5.  Severe or Pervasive Harassment

Defendant also argues that Plaintiff has failed to sufficiently allege the fourth element of her Title VII and KCRA hostile work environment claim, i.e, that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Blackmon*, 587 F. App'x at 930 (citation omitted); [R. 19-1, pp. 12–15]. Instead, Defendant argues, "the conduct [Plaintiff] has alleged is of a kind the Sixth Circuit has consistently held is not severe or pervasive." *Id.* at 15. Defendant then cites to a slew of cases that were resolved at the summary judgment stage or through a bench trial; none of the cases Defendant relies on involved a Rule 12(b)(6) motion to dismiss. *See id.* at 12–15. As the Court has already explained, such cases do not address the issue presently before this Court, namely, whether Plaintiff "allege[s] sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Defendant violated Title VII. *Keys*, 684 F.3d at 610 (quoting *Ashcroft*, 556 U.S. at 678). Because this case is being resolved at the motion to dismiss stage, the Court turns to cases that also involved Rule 12(b)(6) motions to dismiss.

In doing so, the Court is mindful that "Title VII offers employees protection from a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ryan*, 2016 WL 3647155, *3 (quoting *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir. 2012)) (internal quotation marks omitted). However, "conduct

that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* (quoting *Berryman*, 669 F.3d at 717) (internal quotation marks omitted).

However, the Court is also mindful that "it is usually inappropriate to dismiss a plaintiff's hostile work environment claim at the pleadings stage on the basis that the conduct she has alleged was not abusive enough." *Kibbons*, 563 F.Supp.3d at 807–08 (citing *Huri v. Off. of the Chief Judge of the Cir. Ct of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015)).  At this stage of the proceedings, it is generally "premature . . . to conclude just how abusive [the plaintiff's] work environment was." *Huri*, 804 F.3d at 834. While the plaintiff may not be able to produce evidence to survive summary judgment on that issue, "that question can safely be postponed to another day." *Id.* At this stage of the proceedings, "[t]he question is whether a plaintiff's allegations establish that her treatment 'could plausibly be abusive.'" *Kibbons*, 563 F.Supp.3d at 808 (quoting *Huri*, 804 F.3d at 834).

This Court considered these basic principles in *Ryan v. Kentucky Department of Corrections*, 2016 WL 3647155, at *3.[4] There, the plaintiff alleged that her immediate supervisor, a man, subjected her to several sexual comments and text messages about being exposed to a Taser, which was a reference to a sexual reaction that some women experience when exposed to a Taser device. *Id.* She also alleged that her supervisor would engage in conversations about sexual topics in her presence, and such conversations made her uncomfortable. *Id.* The Court assumed the truth of those allegations and concluded that the

---

[4] *Ryan* involved a motion to dismiss that was filed by the defendants *after* they filed an answer; as a result, it was construed as a motion for judgment on the pleadings. *Ryan*, 2016 WL 3647155, at *2. However, as already explained, the same standard applies to a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)(6). *See supra* Section II.

complaint "provides sufficient factual content for this Court to draw the reasonable inference that the Defendants discriminated against her based on her sex and created a hostile or abusive work environment." *Id.*

The district court reached a similar conclusion in the *Austin* case cited above. There, as already noted, the plaintiff alleged that her supervisor "sent her a slew of lewd and inappropriate images, made demeaning comments about her clothing and hair on multiple occasions, and forced her to exercise with a personal trainer at work multiple times a week in an area that he monitored by video camera." *Austin*, 439 F.Supp.3d at 1024–25. She also alleged that her employer failed to reprimand her supervisor's son, also an employee, after he attempted to put his hand down the plaintiff's shirt. *Id.* at 1025. The district court found that the complaint, when viewed in the light most favorable to the plaintiff, allowed the court to "draw[] the reasonable inference that the cumulative effect of these actions created an abusive work environment and constituted more than 'simple teasing, offhand comments, and isolated incidents' that normally do 'not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 907 (1998)).

The Court finds that, like the plaintiffs in *Austin* and *Ryan*, Plaintiff Mesbah has alleged facts from which this Court can draw the reasonable inference that Defendant created a hostile and abusive work environment. For example, Plaintiff alleges that her male supervisor "constantly made inappropriate and unwanted sexual advances toward Plaintiff," including asking her out for drinks, touching her inappropriately, staring at her chest, commenting on her outfits, asking her if she had a boyfriend, and sending her text messages outside of working hours. [R. 16, ¶ 21]. She also alleges that he made disparaging comments about her work and hit her on the back of her head. *Id.* ¶ 23. Assuming the truth of these allegations and viewing them

the light most favorable to Plaintiff, the Court draws the reasonable inference that the cumulative

effect of the alleged actions created a hostile and abusive work environment.

The Court will therefore deny Defendant's Motion to Dismiss to the extent it seeks

dismissal of Plaintiff's Title VII and KCRA sexual harassment/hostile work environment claim

(Count I) on the basis that the Amended Complaint fails to allege sufficiently severe or pervasive

harassment.

### B.  Retaliation under Title VII and the KCRA (Count II)

Defendant next challenges Plaintiff's Title VII and KCRA retaliation claim. [R. 19-1,

pp. 15–18]. Title VII prohibits employers from discriminating against an employee because the

employee has engaged in conducted protected by the act. *See Laster v. City of Kalamazoo*, 746

F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-3(a)). The KCRA similarly makes it

unlawful "[t]o retaliate or discriminate in any manner against a person because he has opposed a

practice declared unlawful by this chapter, or because he has made a charge, filed a complaint,

testified, assisted, or participated in any manner in any investigation, proceeding, or hearing

under this chapter." KRS § 344.280(1). Retaliation claims brought under the KCRA are

evaluated under the same standard used to evaluate federal Title VII claims. *Roof*, 641 F. App'x

at 496 (citation omitted). Thus, in considering Plaintiff's retaliation claim arising under Title VII

and the KCRA, the Court considers case law evaluating Title VII retaliation claims.

To state a retaliation claim under Title VII, "Plaintiff must allege that (1) she engaged in

protected activity; (2) of which [Defendant] knew; (3) as a result of which, [Defendant] took an

adverse employment action against her; and (4) that there was a causal connection between the

protected activity and [Defendant's] adverse employment action." *Wiler v. Kent State University*,

No. 5:20-cv-490, 2021 WL 809350, *7 (N.D. Ohio Mar. 3, 2021) (citing *Denman v. Youngstown*

*St. Univ.*, 545 F.Supp.2d 671, 678 (N.D. Ohio 2008)). However, Plaintiff "need not prove the prima facie elements at this stage of the proceedings," though she "must allege facts that make these elements plausible." *Id.*; *see also Bar*, 2022 WL 3042844, at *3 (explaining that "all that was required was that [the plaintiff] provide an 'adequate factual basis' for his retaliation claim" (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012))).

Here, Defendant argues that Plaintiff's retaliation claim arising under Title VII and the KCRA must be dismissed because (1) Plaintiff's conversation with Dr. Rejc's wife is not a protected activity, and (2) Plaintiff was not otherwise subjected to an adverse employment action. [R. 19-1, pp. 15–18]. The Court considers each of these arguments in turn.

### 1. Protected Activity

For purposes of a Title VII retaliation claim, "there are two types of 'protected activity,'" namely: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII, and (2) making a charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). The former (known as the "opposition clause") protects "complaints to management and less formal protests of discriminatory employment actions." *Bar*, 2022 WL 3042844, at *5 (quoting *E.E.OC. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)) (internal quotation marks omitted). The Equal Employment Opportunity Commission has identified various examples of "opposing" conduct protected under this provision: "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (citing the EEOC's compliance manual). The Sixth Circuit has further explained

that "there is no qualification on who the individual doing the complaining may be or on the party to whom the complaint is made known—i.e., the complaint may be made by anyone and it may be made to a co-worker, newspaper reporter, or anyone else about alleged discrimination against oneself or others." *Id.* (citations omitted).

Nevertheless, Defendant argues that "[c]ourts have held that complaining to third parties is insufficient to constitute protected activity." [R. 19-1, p. 15 (citations omitted)]. However, the case law cited by Defendant in support of this argument is wholly unpersuasive. For example, in *Ramirez v. Bolster & Jeffries Health Care Group, LLC*, 277 F.Supp.3d 889 (W.D. Ky. 2017), the plaintiff raised a retaliation claim under the KCRA, among other claims. *Id.* at 896. The Court found that the plaintiff failed to prove a prima facie case at the summary judgment stage because the only protected activity at issue was a notice relating to her pregnancy, which was not a disability under the law and the notice therefore "was not related to any rights protected by the KCRA." *Id.* at 911. This case clearly does not support Defendant's broadly stated position that "complaining to third parties is insufficient to constitute protected activity," [R. 19-1, p. 15], nor does the only other case cited by Defendant. *See Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, *9 (finding that the employer-entity was not "on notice" of the protected activity because the plaintiff complained to his union representative, not an employee or agent of the entity, and the entity did not otherwise have any knowledge, actual or constructive, of the protected activity).

Nevertheless, the Court agrees with Defendant's next contention, i.e., that Plaintiff did not actually complain about any alleged discrimination when she "engaged in conversation" with Dr. Rejc's wife in his presence. On this point, Plaintiff appears to argue that she engaged in a protected activity by denying Dr. Rejc's sexual advances, citing specifically (and only) to her

conversation with Dr. Rejc's wife. *See* [R. 22, p. 6 (citing R. 16, ¶ 22)]. True, the Sixth Circuit has held that "a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015). Thus, "[i]f an employee demands that his/her supervisor stop engaging in this unlawful practice—i.e., resists or confronts the supervisor's unlawful harassment—the opposition clause's broad language confers protection to this conduct." *Id.* at 4067–68. In the present case, however, Plaintiff does not allege that she resisted or confronted Dr. Rejc's unwanted sexual advances beyond "engag[ing] in conversation" with Dr. Rejc's wife. Instead, the Amended Complaint alleges only that Plaintiff "intentionally reached out to Dr. Rejc's wife" at a charity event, where she then "introduced herself and engaged in conversation with his wife in his presence." [R. 16, ¶ 22]. She alleges that this introduction and conversation "establish[ed] a clear rejection of his personal advances towards her" and Dr. Rejc was "clearly irritated." *Id.* But there are no allegations that, during the conversation with Dr. Rejc's wife, Plaintiff made any reference to Dr. Rejc's behavior or that she expressed her desire for such behavior to stop. Even viewing the allegations in the light most favorable to Plaintiff, the Court finds that, at best, Plaintiff has alleged that she conversed generally with Dr. Rejc's wife in his presence, and this irritated him. There are no other allegations in the Amended Complaint suggesting that Plaintiff ever resisted or confronted Dr. Rejc about his behavior. As such, Plaintiff does not allege that she engaged in the protected activity of resisting harassment.

However, Plaintiff clearly alleges that she complained to a supervisor, Dr. Herrity, in August 2019 and to Director Harkema in September 2019, and then again to Director Harkema and Human Resources in 2021, which resulted in an investigation. *See* [R. 16, ¶¶ 24, 26–27, 30–37]; *Johnson*, 215 F.3d 579 (defining "opposing" under Title VII as including complaining to

anyone about allegedly unlawful practices (citing the EEOC's compliance manual)). Notably, Defendant does *not* argue that these complaints (and Plaintiff's involvement in the subsequent investigation) are insufficient to satisfy the "protected activity" element of Plaintiff's retaliation claim. Instead, Defendant argues that, "[a]ssuming that [Plaintiff] bases her retaliation claim on her alleged report of sexual harassment in 2021, it is still facially implausible because [Plaintiff] has not identified that she was subjected to an adverse employment action," [R. 19-1, p. 16], an argument that the Court addresses below.

To summarize, the Court agrees that, based on the allegations in the Amended Complaint, Plaintiff's conversation with Dr. Rejc's wife at a charity event does not qualify as a protected activity, and Plaintiff did not allege that she engaged in protected activity by resisting Dr. Rejc's sexual advances. However, the Court will not grant the Motion to Dismiss on that basis, as Plaintiff alleges other forms of protected activity, as noted above, and Defendant does not dispute that such activities are protected under Title VII.

### 2. Adverse Employment Action

As the Court has already explained, an essential element of a Title VII retaliation claim is that the defendant-employer took a materially adverse employment action against the plaintiff. *See Wiler*, 2021 WL 809350, at *7; *Laster*, 746 F.3d at 730. However, "[n]ot every action that an employee dislikes is an 'adverse employment action.'" *Campbell v. Norfolk Southern Corp.*, 876 F.Supp.2d 967, 999 (N.D. Ohio 2012) (quoting *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). For example, "petty slights or minor annoyances that often take place at work and that all employees experience" generally do not qualify as materially adverse actions. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted)). Instead, "a plaintiff must show that a reasonable employee would have found the

challenged action materially adverse," or in other words, that the action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted); *see also Haire v. Farm & Fleet of Rice Lake, Inc.*, Case No. 21-cv-10967, 2022 WL 128815, *7 (E.D. Mich. Jan. 12, 2022) (citation omitted).

Ultimately, "in determining whether a reasonable person would be dissuaded, the overall circumstances must be considered." *Haire*, 2022 WL 128815, *9 (citing *Burlington*, 548 U.S. at 69). "Thus, whether a particular action is materially adverse 'depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all circumstances.'" *Id.* (quoting *Burlington*, 548 U.S. at 69). In the end, the plaintiff's allegations need only meet the "relatively low bar" for a materially adverse action, for purposes of pleading a Title VII retaliation claim. *Id.* (quoting *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)) (internal quotation marks omitted).

In the present case, Defendant argues that Plaintiff "has not identified that she was subject to an adverse employment action," citing to only two allegations in the Amended Complaint. [R. 19-1, pp. 16–18]. First, Defendant cites to Plaintiff's allegation that she was "informed" by an unspecified individual that Director Harkema would not be moving forward with Plaintiff's promotion. *Id.* at 16 (citing [R. 16, ¶ 40]). Defendant argues that, based on this single allegation, Plaintiff's "retaliation claims rely purely on rumor," and must therefore be dismissed. *Id.* at 16–17. But Defendant does not dispute that Plaintiff was, in fact, denied the promotion, as the other allegations in the Amended Complaint explain. *See, e.g.*, [R. 16, ¶ 41 (Dr. Zhang informed Plaintiff that he had never been provided with the funding letter necessary

to move forward with her hiring); ¶ 45 (Neither Director Harkema nor any University representative made any further mention of the raise or promotion that had been discussed prior to Plaintiff's complaints)]. Furthermore, the cases cited by Defendant are entirely unpersuasive and inapplicable to the case at hand. *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 576–78 (resolving motion for summary judgment and therefore considering Federal Rules of Evidence when considering whether the plaintiff's KCRA age discrimination claim could survive); *Mitchell v. Metro. Govt. of Nashville and Davidson Cnty., Tenn.*, No. 3:10-cv-0457, 2011 WL 1748582 (M.D. Tenn. May 6, 2011) (granting summary judgment on the plaintiff's age discrimination claims brought under the Age Discrimination in Employment Act and the Tennessee Human Rights Act). Accordingly, the Court finds no merit in Defendant's argument on this point.

Next, Defendant argues that Plaintiff "has also failed to allege sufficient facts to allow the Court to infer she was subjected to a constructive discharge." [R. 19-1, p. 17]. Defendant cites specifically to Plaintiff's allegation that she "had no option but to leave her employment with Defendant." *Id.* at 18; *see also* [R. 16, ¶ 46]. In doing so, Defendant again ignores the remainder of the allegations in the Amended Complaint and fails to consider whether any of the other acts alleged could constitute an adverse employment action. And in fact, in her response brief, Plaintiff argues that she was subjected to multiple adverse employment actions, but never references her resignation. *See* [R. 22, pp. 7–9].  Instead, Plaintiff argues that, after she complained about Dr. Rejc's behavior to Director Harkema, she was actively discouraged from filing a complaint with the University; Director Harkema failed to take any steps to stop Dr. Rejc's behavior; Director Harkema threatened that Plaintiff would not receive a promotion if she reported Dr. Rejc's behavior; and her promotion was ultimately withheld as a result of her

complaints about Dr. Rejc. *Id.*; *see also* [R. 16, ¶¶ 26, 31–32, 34, 36–41, 45]. Defendant does not address any of these allegations in its motion, and it does not dispute that such activities qualify as "materially adverse actions" in its reply brief. *See* [R. 19-1; R. 23].

The Court finds that the allegations in the Amended Complaint provide "sufficient factual content" from which this Court, informed by its "judicial experience and common sense, could draw the reasonable inference" that Defendant retaliated against Plaintiff for complaining about Dr. Rejc's conduct. *See Bar*, 2022 WL 3042844, *5 (quoting *Keys*, 684 F.3d at 610) (internal quotation marks omitted). These allegations, accepted as true for purposes of this motion, were sufficiently severe such that they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 548 U.S. at 68) (internal quotation marks omitted); *see also Funk v. City of Lansing, Michigan*, 821 F. App'x 574, 579 (6th Cir. 2020) ("For the purposes of Title VII, a failure to promote is an adverse employment action." (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 562 (6th Cir. 2000))); *Bender v. General Dynamics Land Systems, Inc.*, 2:19-cv-13177, 2020 WL 436604, *7 (E.D. Mich. July 30, 2020) (explaining that the defendant-employer's "repeated alleged refusal to address Plaintiff's complaints about discrimination" could plausibly have dissuaded her and other reasonable workers from pursuing a discrimination claim); *Haire*, 2020 WL 128815, *10 (finding that the defendant-employer's failure to respond to the plaintiff's complaints and allowing the misconduct to continue "supports a finding of a materially adverse action" (citing *Bender*, 2020 WL 4366049, *7)); *but see Wiler*, 2021 WL 809350, at *7 (finding that the plaintiff failed to allege a materially adverse action because she did not allege that the defendant failed to investigate or remedy her complaints "in retaliation for her complaints, and the amended complaint states no facts that would allow such an inference").

In sum, Plaintiff has sufficiently alleged that she has engaged in a protected activity and that Defendant took a materially adverse employment action against Plaintiff. The Court will therefore deny Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's Title VII and KCRA retaliation claim (Count II) on those grounds.

### C.  "Sexual Harassment and Hostile Work Environment" Under Title IX (Count III) and Retaliation Under Title IX (Count IV)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This provision prohibits "the sexual harassment of a student by a teacher." *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 WL 6255684, *4 (S.D. Ohio Nov. 22, 2019) (citing *Franklin v. Gwinnett Cnty. Public Schools*, 503 U.S. 60, 75 (1992); *Williams ex rel. Hart v. Paint Valley Local School Dist.*, 400 F.3d 360, 366 (6th Cir. 2005)); *see also Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001) (explaining that the Supreme Court has "established that a school district can be held liable under Title IX where its employee sexually harasses a student" (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280 (1998))). It also covers claims of employment discrimination, or more specifically, claims of sex discrimination by an employee of an educational program or activity that receives federal financial assistance. *See North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 531 (1982) (explaining that "employment discrimination comes within the prohibition of Title IX"); *see generally Arceneaux v. Vanderbilt Univ.*, 25 F. App'x 345 (6th Cir. 2001) (considering Title IX employment discrimination claims brought by cross country coach); *Charlton-Perkins v .Univ. of Cincinnati*, 35 F.4th 1053, 1061 (6th Cir. 2022) (considering employee's Title IX claims of employment discrimination).

Importantly, however, the Supreme Court has "rejected vicarious liability and constructive notice as bases for Title IX liability." *Klemencic*, 263 F.3d at 510 (citing *Gebser*, 524 U.S. at 287–88). In other words, "Title IX does not provide for individual liability," and the federally funded institution may be held liable "only for its own misconduct." *Bose v. Bea*, 947 F.3d 983 (6th Cir. 2020) (quoting *David v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)) (internal quotation marks omitted). Thus, to establish a Title IX claim against an educational institution, a plaintiff must ultimately prove the following elements of prima facie case:

> (1) she was subject to *quid pro quo* sexual harassment or a sexually hostile environment so severe and pervasive that it deprived her of educational opportunities or benefits; (2) she provided actual notice of the harassment to an "appropriate person," who was, at a minimum, an official of the University with authority to take corrective action and to end discrimination; and (3) the University's response to the harassment amounted to "deliberate indifference."

*Herman*, 2019 WL 6255684, *4 (quoting *Adams v. Ohio Univ.*, 300 F.Supp.3d 983, 995 (S.D. Ohio 2018)). When faced with a motion to dismiss, a plaintiff need not prove a prima facie case, but she must provide a sufficient factual predicate for these elements. *Id.*

Title IX also protects individuals who complain of sex discrimination from retaliation. *Id.* at *8 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005)); *see also Goldblum v. Univ. of Cincinnati*, 62 F.4th 244 (6th Cir 2023) (considering Title IX retaliation claims brought by employee of public university). To establish a prima facie case of Title IX retaliation, a plaintiff must ultimately demonstrate that "that (1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Bose*, 947 F.3d at 988 (quoting *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017)) (internal quotation marks omitted).

In this case, Plaintiff has brought claims under Title IX for "sexual harassment hostile work environment" (Count III) and retaliation (Count IV). Defendant argues that these claims must be dismissed because (1) they are untimely; (2) they are preempted by Plaintiff's Title VII claims; and (3) regardless, they fail for the same reasons that Defendant argues her Title VII and KCRA claims fail. [R. 19-1, pp. 18–25].

### 1. Preemption

The Court first addresses Defendant's argument that Plaintiff's Title IX claims are necessarily preempted by her Title VII claims. Specifically, Defendant argues that Plaintiff's "Title IX claims are identical to her claims of sexual harassment and retaliation under Title VII and are based on the same allegations she bases her Title VII claims on." [R. 19-1, p. 20]. The Title IX claims must be dismissed, Defendant argues, because Title VII provides Plaintiff's exclusive remedy, citing heavily to case law from the Fifth and Seventh Circuits. *Id.* at 20–21. Defendant then cites to a Sixth Circuit case and two district court cases from this circuit to argue that the Sixth Circuit has "favorably agreed" with the Fifth and Seventh Circuits' preemption analyses. *Id.* at 21–22. Defendant has mischaracterized these cases, however.

First, Defendant cites to *Arceneaux v. Vanderbilt University*, 25 F. App'x 345 (6th Cir. 2001). In that case, the district court held that an implied cause of action for employment discrimination exists under Title IX, and such claims are *not* preempted by Title VII. *Id.* at 346. On appeal, the university conceded that point "based on [the Sixth Circuit's] unpublished decision in" *Ivan v. Kent State University*, 92 F.3d 1185, 1996 WL 422496 (6th Cir. July 26, 1996). *See Arceneaux*, 25 F. App'x at 346. In the *Ivan* case, the Sixth Circuit held that Title IX creates a private cause of action for employment discrimination, and it expressly overruled

*Wedding v. University of Toledo*, 862 F.Supp. 201 (N.D. Ohio 1994), which held that Title VII preempts an individual's remedy under Title IX. *See Arceneaux*, 25 F. App'x at 346–47.

Nevertheless, Defendant cites to Judge Batchelder's concurrence in *Arceneaux*, in which she states that she "write[s] separately . . . only to say that I agree with the well-reasoned opinion of the Fifth Circuit . . . that Congress did not intend for Title IX to provide the route for an end-run around Title VII for individuals claiming employment discrimination on the basis of gender," and she would therefore "dispose of this case on that basis." *Id.* at 349. But Judge Batchelder's view on this preemption issue was *not* the view of the majority, which expressly acknowledged the Sixth Circuit's prior ruling that Title VII does *not* preempt an individual's private remedy under Title IX. *Id.* at 346–47. To cite this concurring opinion and state that the Sixth Circuit has therefore "favorably agreed" with the Fifth and Seventh Circuit's preemption analyses is disingenuous, at best. To further cite *Wedding*, which has been expressly overruled by the Sixth Circuit in *Ivan* and acknowledged as overruled in *Arceneaux*, is equally troubling. And in the remaining cases cited by Defendant, the Courts did not consider the specific preemption question raised here—i.e., whether Title VII preempts an individual's private remedy under Title IX. *See Bryant v. Wilkie*, No. 3:18-cv-00104, 2020 WL 836547, *2 (M.D. Tenn. Feb. 20, 2020); *Burnett v. Wilkie*, No 1:18-CV-1179, 2019 WL 4452388, *7 (N.D. Ohio Sept. 17, 2019). In fact, Defendant has failed to cite any applicable authority to support its argument that Plaintiff's Title IX claims are preempted by her Title VII claims.

In light of the Sixth Circuit case law cited above, *see Arceneaux*, 25 F. App'x at 346–47; *Ivan*, 1996 WL 422496, at *2, the Court will deny the Motion to Dismiss to the extent that Defendant seeks dismissal of Plaintiff's Title IX claims on preemption grounds.

**2.   Failure to State a Claim for Deliberate Indifference or Retaliation Under Title IX**

Defendant next argues that Plaintiff's Title IX claims (Counts III and IV) are applicable only to the alleged discrimination that took place when Plaintiff was a student and, as a result, those claims must have been filed by June 2020, within a year after Plaintiff ceased being a student at the University. [R. 19-1, p. 20]; *see also Smith v. Spaulding Univ.*, No. 3:15-CV-00595-GNS, 2016 WL 3748522, *2 (W.D. Ky. July 8, 2016) (applying one-year statute of limitations to Title IX claims). In her response, Plaintiff argues that the discovery rule applies, and she did not discover Defendant's wrongdoing until after the conclusion of the Title IX investigation. [R. 22, pp. 10–13 (relying on *Snyder-Hill v. Ohio State University*, 48 F.4th 686 (6th Cir. 2022)]. She appears to rely in large part on her allegation that, after the University's Title IX investigation ended, "it was disclosed that at least one other female employee complained of Dr. Rejc's inappropriate and unwanted sexual advances,"[5] and it was also disclosed that witness interviews were documented differently, and Director Harkema admitted that she had not handled Plaintiff's complaints properly, among other things. *See* [R. 16,  ¶ 44]. Thus, she argues, her cause of action did not accrue until approximately December 2021, when the investigation concluded. [R. 22, p. 12].

In making this argument, Plaintiff makes clear that her Title IX claims are based on the school's alleged deliberate indifference to the harassment that she suffered as a PhD student, *not* the harassment that allegedly occurred during her employment with the University. *Id.* at 9 (explaining that her "Title IX claims are based on incidents which occurred prior to her

---

[5] In her response brief, Plaintiff also alleges that, "through information and belief, there are other female employees who have experienced similar inappropriate touching." [R. 22, p. 12]. The Amended Complaint contains no such allegation, nor does it provide any information whatsoever about the "other female employee" who complained about Dr. Rejc's inappropriate behavior. Plaintiff cannot amend her complaint through a response brief. *See Waskul v. Washtenaw Cnty. Community Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

employment with Defendant, and during her tenure as a PhD student with Defendant University"); *see also id.* at 10 ("Plaintiffs (sic) Title IX and Title VII claims are based on different sets of facts . . . ."). On this point, the Court notes that, in addition to teacher-student harassment, "employment discrimination comes within the prohibition of Title IX." *North Haven Bd. of Ed. V. Bell*, 456 U.S. 512, 531 (1982); *see also Arceneaux*, 25 F. App'x at 346–47; *Charlton-Perkins*, 35 F.4th at 1061; *Goldblum*, 62 F.4th at 251–52. But even if Plaintiff's Amended Complaint, when read broadly, plausibly alleges facts that could support a Title IX *employment* discrimination claim, *see generally* [R. 16], Plaintiff repeatedly insists that her Title IX claims are based on the alleged sexual harassment that she endured as a *student* at the University, not as an employee. *See, e.g.*, [R. 22, pp. 9, 10]. Her Title IX arguments also rely only on the events occurring during her tenure as a PhD student. For example, to support her Title IX claim, Plaintiff does *not* rely on the notice that she gave to Herrity or Harkema in late 2019, while she was an employee. *See id.* at 9–13 (discussing Title IX claims). Instead, Plaintiff relies on one vague allegation in her Amended Complaint regarding the school's awareness of another individual's allegations against Dr. Rejc, as discussed in more detail below. *Id.* at 12. Given these arguments, and Plaintiff's repeated insistence that her Title IX claims arise only from the sexual harassment she allegedly suffered as a student, the Court views her Title IX claim through this lens.

But even accepting that Plaintiff intended to raise a claim of deliberate indifference under Title IX for the alleged harassment she suffered as a student and that such a claim was timely filed, the allegations in the Amended Complaint do not support such a claim. As noted above, a plaintiff must at least allege a sufficient factual predicate for the elements of such a claim, including that she provided actual notice of the misconduct to an "appropriate person," i.e., an

official of the University with authority to take corrective action and to end the discriminatory behavior. *Herman*, 2019 WL 6255684, at \*4. Plaintiff does not allege in her Amended Complaint that she made any complaints to any school officials during her tenure as a PhD student. Instead, she alleges that she first told a school official (her supervisor, Herrity) in August 2019, several months after her PhD tenure had concluded. [R. 16, ¶ 24].

The timing of her notice is important. Timely actual notice "is critical to Title IX claims because 'the express remedial scheme under Title IX is predicated upon notice to an appropriate person and an opportunity to rectify any violation.'" *Bennett v. Pennsylvania Hosp. School of Nurse Anesthesia*, Civ.A. 01-CV-4098, 2022 WL 32341792, \*4 (E.D. Pa. Oct. 29, 2002) (quoting *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 291–92 (1998)) (internal quotation marks omitted). For example, in *Bennett*, the district court found that the plaintiff failed to "satisfy the actual notice standard required to prevail on her Title IX claims" because she did not provide notice to the defendant-school until *after* she was no longer a student. *Id.* at \*5.  Because she did not provide actual notice until after she had been dismissed by the school (and had exhausted the process through which she could have been reinstated as a student), the school "was deprived of the opportunity to address the allegations or stop the alleged harassment while [the plaintiff] was a student, or even while Plaintiff's status as a student was still under Defendant's consideration." *Id.* As a result, the court concluded, the school "should not be held liable under Title IX for behavior it did not have a chance to remedy." *Id.* (citing *Gebser*, 524 U.S. at 290). Similarly, in the present case, Plaintiff does not allege that she provided actual notice to any school official during her tenure as a PhD student,[6] nor does she

---

[6] In fact, in her response brief, she seems to rely on this very point when making her statute-of-limitations arguments, arguing instead that she was not aware of the school's deliberate indifference until after the Title IX investigation concluded.

argue that her notice to Herrity and Harkema in late 2019 satisfies the notice require for her Title IX claim. On this point, the Court again notes Plaintiff's own insistence that her Title IX claims arise from the alleged harassment she suffered as a PhD student, not the harassment that she allegedly suffered an employee of the school.[7] *See, e.g.*, [R. 22, p. 9].

Nevertheless, the element of actual notice may be satisfied "when an appropriate official has actual knowledge of a substantial risk of abuse . . . based on prior complaints of other students." *Herman*, 2019 WL 6255684, at *4 (quoting *Adams*, 300 F.Supp.3d at 996) (internal quotation marks omitted). In her Amended Complaint, Plaintiff alleges that, after the conclusion of her Title IX investigation, "it was disclosed that at least one other female employee complained of Dr. Rejc's inappropriate and unwanted advancements." [R. 16, ¶ 44]. But the Amended Complaint contains no other facts about this other female employee's complaint, such as when the complaint was made and to whom, and whether the University had any knowledge of it prior to Plaintiff's Title IX investigation. In other words, there are no allegations from which one could reasonably infer that "an appropriate official [had] actual knowledge of a substantial risk of abuse . . . based on prior complaints of other students." *Herman*, 2019 WL 6255684, at *4. (quoting *Adams*, 300 F.Supp.3d at 996) (internal quotation marks omitted). The Amended Complaint therefore fails to state a claim for deliberate indifference under Title IX, and that claim (Count III) must be dismissed.

Plaintiff's Title IX retaliation claim (Count IV) must also be dismissed. As noted above, a plaintiff asserting a Title IX retaliation claim must allege a sufficient factual predicate for the

---

[7] The Court again notes that Plaintiff has repeatedly stated that her Title IX claims arise only from the facts surrounding her time as a PhD student. *See, e.g.*, [R. 12, pp. 9, 10]. The Court therefore views her Title IX claims through this lens, as previously discussed. Should Plaintiff wish to allege an *employment* discrimination claim arising under Title IX, she must first seek leave to amend her complaint. The Court makes no assessment of the merits of that issue or whether such a claim would be time-barred as Defendant argues with respect to Plaintiff's Title IX student harassment claim.

following elements: "(1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Bose*, 947 F.3d at 988 (quoting *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017)) (internal quotation marks omitted). While the Court has concluded that Plaintiff has sufficiently alleged that she engaged in a protected activity and suffered a material adverse employment action for purposes of her Title VII retaliation claim, Plaintiff makes clear in her response brief that her Title IX retaliation claim is "based on different sets of facts." [R. 22, p. 10]. Specifically, she argues that her Title IX retaliation claim is based on those facts occurring during her tenure as a PhD student. *See id.* at 9. However, the Amended Complaint does not contain any facts from which one could reasonably infer that Plaintiff engaged in a protected activity during her tenure as a PhD student. And beyond arguing that this claim is based on facts different from those supporting her Title VII claims, Plaintiff completely fails to address her Title IX retaliation claim in her response brief. *See id.* Because she has failed to allege facts from which the Court could reasonably infer that she engaged in a protected activity for purposes of establishing her Title IX retaliation claim, this claim (Count IV) must be dismissed.

## IV.  CONCLUSION

For the reasons outlined above, the Court finds that Plaintiff's Title IX claims (Counts III and IV) must be dismissed. However, her remaining claims under Title VII (Counts I and II) survive this Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.  Defendant University of Louisville's Motion to Dismiss, [**R. 19**], is **GRANTED IN PART** and **DENIED IN PART**.

a.   The motion is **GRANTED** to the extent Defendant seeks dismissal of

Plaintiff's Title IX claims (Counts III and IV) for failure to state a claim.

Counts III and IV of the Amended Complaint are hereby **DISMISSED**.

b.   The motion is **DENIED** in all other respects.

This the 15th day of September, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY